Good morning, ladies and gentlemen. Our first case for this morning will be Streckenbach v. Van Densen. Mr. Johannes. May it please the court. Good morning. I'll be taking all of your questions today. I may be reading them off of this screen. In this case, three major things went wrong, and the end result was that Mr. Streckenbach was deprived of his property without due process of law. And as I talk about the facts here, I want to emphasize that this was a summary judgment case, so my client gets the benefit of the doubt on any factual disputes. So first, there was a major shift in prison policy regarding the disposition of inmate property, and Mr. Streckenbach sued people responsible for that new policy, the warden, his deputy. Second, Mr. Streckenbach did not have notice of the new policy. He never had the opportunity to read the policy document, never knew about this new requirement he had to comply with. At a minimum, there are disputed facts on that point, and several people were responsible for that. Third, Sergeant Van Densen actually had his hands on the property, and he destroyed it, even though he should have known about the failure of notice. Could you say a word about his lack of notice? Because whether he personally read something, for example, on a bulletin board, isn't really the institution's fault, is it? Well, here he had no opportunity, there was no constructive notice either, at least for purposes of summary judgment. Because Mr. Streckenbach went to the library, and he testified in his verified submissions that the new policy was not in the library. The only policy there was the old policy. And there's a minimum, there's a disputed fact as to whether the policy was ever posted on the unit bulletin boards. And no one contends the policy was posted in the mail room, which might have been the most logical place for it. So here there was no constructive notice either, at least for purposes of summary judgment. So for summary judgment, you are arguing that his testimony, quote, I didn't see it on the bulletin board, is at least circumstantial evidence that it wasn't there. It's one piece of circumstantial evidence, yes, and he is an inmate, so he has personal knowledge of what's on the bulletin board. And the only evidence contrary to that is the general policy, which may or may not have been found in this particular instance. Could you say a word about your, you seem also to be arguing a theory that if things had gone correctly, he might have had the chance to have a partial shipment of his goods, even if he didn't have enough money to ship everything. Yes, so under, well, under the previous policy, he could have gone down to the property room and potentially taken all the property back or he could have shipped out part of the policy. And so when he dropped off his property, he would have been able to rest assured that that would happen. And the fact that he, the fact that the property was destroyed because he did not have enough money in his inmate account when he didn't know that he had to worry about that. Now, if they had filled out, if they had filled out this form, this authorization form that they should have done when he dropped the property off, would it have shown, you know, this is going to cost $9 or whatever it was? Yeah, so there was a, there was a, there was a form and just, just, just for clarity, I'll say there was actually, there's two relevant forms here. There was a form that's in your supplement, your separate appendix that he did fill out, which just lists the property and lists his second option. There was another form called disbursement form, which the policy said he should have filled out when he dropped off his property. And there's not a copy of that form in the record, but presumably that form would have identified the shipping cost. And it also, since a disbursement form, it would have authorized the prison to deduct that shipping cost. So they have every incentive not to lose that form because if they had lost that form, then even if Mr. Struckenbach had enough money in his account to ship the property, presumably they wouldn't be able to deduct it. And so the whole point of the policy to move quickly would break down. So that's all the more reason why the absence of that form, the absence of that record, should have been a red flag to Van Densen. Okay. And, and so in that, and so, and just to say a little bit more about Van Densen here and why Van, and why Van Densen in particular is liable. And why he doesn't have, why he's not entitled to qualified immunity. So it was clearly established that the, that one cannot enforce a requirement, sanction an inmate for violating a requirement if the inmate does not have notice of it. And a reasonable official in Van Densen, for the reasons I've been talking about, would have known he was about to do just that. So can you, why, you're equating the destruction of his property with a sanction. And it seems the prison very well may say, it's not a sanction, it just means you've abandoned it, more or less. And, and, and I don't think that's right. And even the policy, both the new and the old prison policy, recognized that even if the property was not picked up on a visit, the inmate still had rights in it. That's why, that's why they gave him this second option. And the, and, and they called it disposition policy, but the, at least, but according to Mr. Struckenbach, which at least on summary judgment is controlling here, he wanted the policy to be picked up by his son. But when an inmate, I'm sorry, he wanted the property to be picked up by his son. Right, right, right. But when, but an inmate can't necessarily control what other people outside the prison are going to do. And so the policy theoretically gave the inmate a chance to identify what he wanted done with his property. And the problem here was actually it did not have sufficient, did not have sufficient safeguards that, that ensured that, that the inmate would be able to comply with the requirement to keep enough money in his account. So that's because no one told him that he had to keep his eye on the $9.27 ball, so to speak. Well, it's for several reasons, and that's one of them. There's the fact that, there's the fact that the policy document was never put anywhere where he had an opportunity to read it. And in fact, making matters worse, the old policy, which had a different requirement, was still in the library. So that's part of it. And then when he dropped off the property, he was not asked to fill out a disbursement request or told the shipping cost, and there was no suggestion there of this new requirement. So at that point, yes, in light of all those facts, he did not have the opportunity to comply with the policy. And so just to sum up here, and so, sum up here, for the reasons I've discussed, that was a due process violation. And then Van Denson is liable for it because he actually destroyed the property. Why, why not the warden? I mean, you know, Van Denson seems to have done what the prison policy told him to do. It seems harsh to nail him for this. And I think that, and, well, I'm arguing they're both liable, but it's Van Denson specifically. Van Denson at least should have known that Mr. Steckenbach did not know about the shipping cost because he knew the form wasn't there. And the warden is responsible for the policy. He's the one that signed it, presumably, as far as we know, could have revoked it at any time. And so he's also liable. I'm lost by that. Why is the warden liable for the policy? If the problem is that the policy wasn't posted and that there was no individual notice when the property was received, why would that yield liability for the warden? The warden didn't do either of those two things. Because, because he knew what the policy said when he, when he allowed. But the policy, so far as I can see, is perfectly valid. The potential problem in this case is that the plaintiff didn't have notice of the policy. So the warden is responsible for the policy, but the policy is not implemented correctly. Why would the warden be liable for incorrect implementation of a valid policy? Well, here the incorrect, the incorrect implementation would have been foreseeable from the start because this is not. Any, any public official who establishes any policy will foresee that sometimes things will get messed up. It's just inevitable. So on that view, every, every governor, every member of Congress, the president all the time, if an FBI agent shoots somebody who shouldn't, the president would be liable for the policy of allowing the FBI to carry guns. Is that right? Well, here I would say that this situation is different because there are specific points in the process. There's a specific point where the inmate drops off the property. There's a specific point where the property is destroyed. And at those specific points, something could go wrong. It's not a situation. I thought you were making a broader argument, which is, at least it would address part of what Judge Easterbrook is talking about, that you don't think it's a valid policy because it doesn't have enough safeguards in it. It's, it fails Matthews against Eldridge. I thought you were arguing. Now, if you take issue with whether it's a valid policy, then you're at a different level of discussion at least. Mm-hmm. And, well, that is, that is one of my arguments. And also I'm, and just to be clear, I am also making the argument that even that Sergeant Van Denson enforced this policy and the policy, even if the policy is perfectly valid, here the policy was enforced. Well, that's a Van Denson point, I think. Correct. All right. So your time is up. I'll see if I'm going to give you an extra minute, but let's see how the other argument goes.  Ms. Potts. Good morning. Good morning. My name is Abigail Potts and I'm here on behalf of the state defendant in this case. The main point that I want to mention today is that from the state's perspective, this policy is completely constitutional. It is, it is a valid policy. And Streckenbach's claim fails no matter how you characterize it because given the fact that it's, it's a constitutional policy, he has not alleged anything else that implicates the due process clause. Well, he's alleged that the state took his property without notice, without giving him any chance to perhaps give half a loaf. He's alleged some, and surely you agree that it's property, and it's my understanding from this record that it's not property he was not permitted to have in his cell. It's simply a convenience that you can send it out. There's nothing contraband about it. You know, he just trusted the institution to handle his property and the institution destroyed it. Correct. And I think the critical point is that not every deprivation of property triggers the due process clause. And we would argue that this falls in that realm of either random and unauthorized acts that just simply don't create a basis for a due process claim, or mere torts, not constitutional torts, just simple torts. Yes. But let's go through the Matthews against Eldridge. There is a private property interest, and actually the state has an interesting mis- or maybe it's not quite a misstatement, but there's a point in the state's brief where you're discussing Matthews against Eldridge and talking really about only the state's interest. But, of course, there are lots of interests. There's a private interest at stake in somebody's interest in his property. It's photo album, irreplaceable. Maybe the legal document's more replaceable. I don't know. And the question is, what safeguards does the state have in place? Well, apparently none if Plan B doesn't work. There's no notice. I mean, the state's taking a very aggressive position. There's no right to notice of this policy. There's no right to provide feedback to the officer who's the bailee sort of of your property to indicate whether you just want to have it sent back to your cell, which would not be a terrible burden on the prison. It's a pretty weak policy. So I would disagree. I would say that that's not the state's position. The state's position is not that we don't need to give notice of this policy. But you didn't here. The facts indicate that there's a dispute. The facts here, even giving Mr. Streckenbach the benefit of the doubt on summary judgment, do establish that the institution has a policy, a regular policy or a procedure for providing notice. They post them on the bulletin boards, and they put it in the library. But there's a dispute about whether they did either one of those because when he goes to the library, it's the old policy that would not have caused the problem. Correct. And when he looks at the bulletin boards, he says it's not up there. Well, that's some circumstantial evidence that it's not there. No one says he's illiterate. And that goes to whether or not someone didn't do something right again. Or maybe the institution didn't put it up there. But then again, that would be someone didn't follow the institution procedure, which is to post it in two places to provide constructive notice. There is no dispute here that the policy itself provides multiple instances of notice of what will happen to your property if your second option, if there isn't enough money in your account to do your second option. I totally understand. So the policy has notice. But wait a minute. You have to be arguing that if the state promulgates a policy, if the prison promulgates a policy, and the warden just puts it in the top drawer of his desk, and there's no notice to any inmate, that as long as the policy has language in it that says, and this will be posted on the bulletin boards and put in the library, that the inmate has no claim. And I have a lot of trouble with that proposition. I don't think that's our proposition. You have to be arguing implicitly that some of these things were done. But there is a factual dispute about that. I think there would be a problem here, and I think Mr. Streckenbrock's argument would have merit, if there was evidence in the record that, in fact, there is no institution policy for providing any notice at all, whether or not it was executed properly. Let's just take the library. Why isn't it enough to show that he goes to the library and only the old policy is there? Why shouldn't an inmate be entitled to rely on what's in the library? Well, now, we're getting to a point where we need to, especially under Massachusetts, be able to. But they can't, you're saying. An inmate has to disregard what the library says. No. The record shows that he did not even go into the library and look for the policy until after his property was destroyed. So he never went in there to try to look at the policy and see how should I handle my property. So you think the policy that the library was holding changed between when he looked and when? Well, we don't know. We don't have a record for that, unfortunately. But what I'm saying is that all of these, we're not saying that mistakes didn't happen. We're not saying we wouldn't be here if no mistakes happened. True. Small mistakes happened here. But our whole point is that these do not rise to the level of a constitutional due process claim. And that's kind of, again, what our point is. That it stinks that his property got destroyed. I can commiserate with that. That's not a good thing to have happen. And I don't think Defendant Van Densen wanted that to happen unlawfully. The problem for Mr. Streckenbach's claim is that the policy itself is constitutional and the only other things, you can only characterize his claim one of two ways, and Judge Easterbrook kind of brought this up as well, that you either are attacking the constitutionality of the policy itself or how it's implemented. Something somebody did kept him from finding out about it. And he has different defendants, of course. Maybe the warden, if it's just an implementation, we have all sorts of law, whether it's Al Kidd or whether it's our Vance case. If it's just implementation, hard to see where you're going to go after the warden. But we do have the person who actually destroyed the property. I think this whole question, too, is complicated by the fact that Mr. Streckenbach being unrepresented at the beginning of this litigation, his arguments and the way he characterizes his due process claim has changed dramatically from his complaint in this case through this appeal. Just evolved naturally because he also now has representation. But I think that really also kind of confuses the issues on what is his due process claim. He started this case by alleging a purely random and unauthorized act that Mr. Van Densen did not follow the policy. And that fits pretty squarely within a claim for which there is a viable tort remedy for. Now, on appeal, his arguments have shifted. Although there, of course, actually isn't a viable tort remedy because of immunity. Are you implying immunity? Well, and it would be our position that immunity is there to take away a bunch of the claims against government officials that should not be there in the first place. So they can destroy his property with impunity. Not with impunity. Oh, yes, with impunity in this case. That's exactly right. They destroyed his property. Keep in mind, we are in a prison here where prison officials destroy inmate property without notice all the time. Of course, and that's why I emphasize that there was nothing wrong with this property. If the prison had said, you know, we think it's a security risk to have too many magazines in your cell or we think it's a security problem to have photo albums or whatever, I would think this would be quite a different case. But this property seemed not to be that kind of property. Well, and I think your point is a good one, that once an institution allows certain property, new rights are created. Whether or not a deprivation of any of that property subsequently triggers a due process violation. You've never argued this wasn't his personal property. I'm not arguing that now. I'm saying since he was allowed to have it, that's why we're here. If this was contraband, if this was property over the amount of money, amount of what he could be allowed, we wouldn't even be here. So we're here because the institution allowed him to have that and he chose to trigger this policy. This policy is a disposal policy. So he chose to get rid of this property through a visitor. Well, let's say to transfer. I take exception to the idea of getting rid of. Disposal versus destruction. He wants somebody else to be the custodian of his property while he's in prison. He doesn't want his property destroyed. He doesn't want it disposed of. He wants a different custodian. He wants to get it out of the institution. For whatever reason that's not in the record, possibly it's over the property limit. Whatever the reason is, he's getting rid of property either so he can get more. He doesn't like clutter. Or he doesn't like clutter. But I think it's critical, too, to the Matthews v. Eldridge analysis that this is a situation where an inmate is choosing to get rid of some property through a certain channel, and he had two opportunities for this not to be destroyed. But he didn't know he had two opportunities without being asked at the end. You have to accept that. I accept that he didn't know that. Then we get down to was constructive notice about this enough? I think, again, we get back to the state's position, which is given that the policy itself is constitutional and that it's undisputed that the institution has a general procedure for providing notice on bulletin boards and in the library, and there's not a dispute on that, but the dispute is whether or not it was executed properly. So the policy is constitutional here, and all of the things that Streckenbach tries to dredge up to create a claim simply do not rise to the level of a constitutional challenge. They are either negligent acts, and this court has found that mere negligent destruction of property is not a due process claim. We can't prevent that. We can't prevent someone. Thank you very much. Mr. Johannes, if you would like one minute and one minute only, I will give that to you. Hi. In response to one of the points Your Honor made, I agree this is similar to a situation where there was a policy in the desk drawer and no one ever saw it. Mr. Streckenbach did not have an opportunity to comply with this requirement, see the policy document, know what the shipping cost was, and the destruction of property for failing to meet a requirement that he had no opportunity to comply with is the essence of a due process violation. As far as who's liable for it, we have the person who actually destroyed his property, even though he had the facts before him that showed this lack of notice, and we also have the person who was responsible for the policy's existence, this policy that created this situation and was enforced against it. And if there are no further questions, thank you. All right, thank you very much, and we appreciate your taking this case and the help that you've given to your client and to the court. Thank you, and thanks as well to the State. We will take the case under advisement.